UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | |
| v. | ) | Crim. No. 11-10195-RWZ |
| | ) | |
| MATTHEW M. HEINECKE | ) | |

**Defendant's Supplemental Motion to Suppress Evidence and Memorandum of Law**

The defendant, Matthew M. Heinecke ("Heinecke"), hereby supplements his previously-filed motion to suppress for the purpose of 1) articulating an additional argument supporting a previously-raised issue concerning the agents' mistake in identifying the target premises -19 Sylvan Lane - as Jeffrey Spinks' residence and 2) preserving the issue of staleness.

The defendant relies upon his statement of facts contained in his original motion to suppress.

**Argument**

1.   The Misidentification of the target premises as Jeffrey Spinks' residence

As noted in Heinecke's first motion to suppress, the search warrant in this matter erroneously identified 19 Sylvan Lane as the residence of the warrant's target, Jeffrey Spinks, when in fact Spinks lived in Natick, Massachusetts and was merely the landlord for 19 Sylvan Lane. Relying upon the Supreme Court's decision in Maryland v. Garrison, 480 U.S. 79 (1987), Heinecke asserted that once it became apparent that 19 Sylvan Lane was Matthew Heinecke's residence and not Jeffrey Spinks', agents were required to end their search and seek a new warrant because the validity of the warrant for 19 Sylvan Lane was necessarily dependent on Spinks maintaining his residence there.

1

This position is further bolstered by the Supreme Court's guidance in <u>Johnson v. United States</u>, 333 U.S. 10, 14 (1948), where it cautioned that in the absence of urgent circumstances officers should not rely on their own discretion, but should instead resort to a neutral magistrate to determine whether probable cause to conduct a search exists. "[W]hen the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent." <u>Id.</u>  Although <u>Johnson</u> speaks specifically to the situation in which officers conduct a warrantless search, other courts have found its reasoning applies with equal force to cases in which officers possess a warrant but are alerted to circumstances which affect the probable cause for its execution.  See <u>United States v. Perez</u>, 484 F.3d 735, 743 (5th Cir. 2007) (analysis applies to information obtained during execution of warrant); <u>United States v. Marin-Buitrago</u>, 734 F. 2d. 889, 894 (2nd Cir. 1984) (analysis applies to information obtained after issuance of search warrant; "when a material change has occurred in the facts underlying the magistrate's determination of probable cause, it is the magistrate, not the executing officers, who must determine whether probable cause exists."); <u>United States v. Bowling</u>, 900 F.2d 926, 933 (6th Cir. 1990) ("The Fourth Amendment's protection against unreasonable searches and seizures would be an incomplete and highly manipulable safeguard if a neutral magistrate could not play the same role in assessing continuing probable cause that he plays in determining probable cause to issue the warrant in the first place. Because no exigent circumstances are presented by the facts of this case, the officers should have refrained from [executing the search warrant] until a neutral magistrate determined that probable cause continued to exist.")

Here, the foundation of the government's warrant was its belief that the target premises was the residence of Jeffrey Spinks. As noted in Heinecke's first motion to suppress, the only conceivable basis for a finding of probable cause required the magistrate to draw inferences about Spinks' use of his residence to store marijuana or evidence of marijuana distribution. Had the warrant correctly identified the premises as the residence of Matthew Heinecke, about whom nothing was known when the affidavit was sworn, the warrant surely would not have issued, because neither drugs nor evidence of drug distribution had ever been seen at the target premises and the residence had not been identified as a base of a drug distribution operation. The validity of the warrant unquestionably required that the target premises was, in fact, the residence of Spinks'. Thus, once it became apparent that Jeffrey Spinks did not live at 19 Sylvan Lane, agents were required to stop their search and bring the new information to the attention of the neutral magistrate. The agents were not permitted to substitute their own judgment in determining if the underlying probable cause still existed, or if new probable cause existed.  See United States v. Moore, 742 F.Supp 727, N. 6, (N.D.N.Y. 1990) (In anticipatory context, where officer's failed to advise magistrate that anticipatory event did not occur, "[i]t is certainly clear that, when compared with the universe of other possibilities, the likelihood was greater that the packages were located at the defendant's apartment. Nonetheless, because the officers never approached [the magistrate], the court need not reach the difficult question of whether [the magistrate], if the intervening facts had been relayed to him, could have properly found probable cause that the packages would be located at the defendant's residence.").

3

2.    Staleness

In his first motion to suppress, Heinecke argued there was insufficient information about Spinks and his drug dealing activities to permit any kind of inference about his use of 19 Sylvan Lane to store marijuana or evidence of marijuana distribution. For the same reason, Heinecke asserts that the information contained in the affidavit was stale when the warrant was issued and executed one week later.

The function of a staleness test in the search warrant context is not to create an arbitrary time limitation within which discovered facts must be presented to a magistrate. United States v. Spikes, 158 F.3d 913, 923 (6th Cir. 1998) (Internal citations omitted). The question of staleness depends on the inherent nature of the crime, and "[i]nstead of measuring staleness solely by counting the days on a calendar, courts must also concern themselves with the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), and the place to be searched (mere criminal forum of convenience or secure operational base?). Id. (internal citations and quotations omitted).

In this case, the item sought – marijuana – was perishable. Although the alleged quantity of marijuana was significant, the affidavit did not contain sufficient information about Spinks, the nature of Spinks' marijuana distribution, or his use of the target premises to permit an inference that marijuana would be located there one week after he allegedly brought 40 pounds of marijuana there. For these reasons, the information in the affidavit was stale by the time the warrant was executed.

5

## CONCLUSION

For the above stated reasons, the defendant requests that all fruits of the search and seizure at 19 Sylvan Street on April 20, 2011 be suppressed.

Respectfully Submitted,

Matthew M. Heinecke
By His Attorney


/s/ William H. Connolly
William H. Connolly
BBO # 634501
20 Park Plaza, Suite 1000
Boston, MA 02116
617-542-0200

## Certificate of Service

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non registered participants on January 28, 2012.

/s/ William H. Connolly
